# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JOSE ALFREDO CORTES-AZCATL,

Defendant-Appellant.

UNPUBLISHED
April 21, 2015

No.  319725
Wayne Circuit Court
LC No.  13-004761-FH

Before:  HOEKSTRA, P.J., and MARKEY and DONOFRIO, JJ.

PER CURIAM.

Defendant appeals by right his jury trial conviction of operating a motor vehicle while intoxicated causing death, MCL 257.625(4).  Defendant was sentenced to 5 to 15 years' imprisonment for his conviction.  We affirm the conviction but remand for resentencing.

## I. FACTS

This case is the result of a deadly automobile accident that occurred in Woodhaven around 11:00 p.m. on May 14, 2013.  A Ford Focus, travelling between 47 to 53 miles per hour, driven by Logan Harbeck, hit a Saturn van, travelling between 15 and 22 miles per hour, driven by defendant.  Defendant was travelling west on Van Horn Road and turning left into Woodhaven Place Mobile Home Park; Harbeck was travelling east on Van Horn Road. Harbeck's vehicle "t-boned" defendant's vehicle on the passenger side, where defendant's fiancée, Laura Erwin, sat.  Harbeck and his passenger, Jordan Taylor, were injured in the crash. Defendant sustained a head injury, and Erwin died in the accident.

Taylor testified that the Saturn did not signal at all before turning into the mobile home park.  Taylor and Harbeck both testified that the Ford Focus' headlights were on.  Defendant maintained that he could not see the Ford Focus or any other vehicle travelling east on Van Horn Road before he turned, indicating that the Ford Focus did not have its headlights on.

Although the headlights were destroyed in the accident, Kevin Lucidi, traffic crash reconstructionist for the Michigan State Police, testified that, in his expert opinion, the Ford Focus's headlights were on at the time of impact.  Lucidi examined the one light that was not destroyed, the front left marker lamp, and it showed evidence of "hot shock."  He explained hot shock as what happens when "the Tungsten that . . . produces the light . . . stretches [at impact] because the filament is hot."  The filament is hot when it's illuminated, which makes it pliable.

-1-

Therefore, evidence of hot shock suggests that the lights were on at the time of impact. The front left marker lamp functions "at least as a parking lamp. Which means it would be illuminated in the parking position or the headlight position." Lucidi explained that, in his experience, it was not unusual to find evidence of hot shock in vehicles where the headlight switch was turned to off. He testified that there are various reasons that this might occur, including that the driver of the vehicle, the emergency personnel, or the wrecker driver could have turned the lights off before the vehicle was towed.

At the crash site, defendant told Sergeant Dennis DeWeese that he had drunk beer. DeWeese smelled intoxicants on defendant's breath. Due to defendant's head injury, DeWeese declined to request that defendant perform field sobriety tests but blood analysis later revealed that defendant had a blood alcohol level of .15 grams of alcohol per 100 milliliters of blood.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence for the jury to find that he proximately caused Erwin's death because the evidence does not support beyond a reasonable doubt that his intoxication was the cause of the accident. Although defendant admits that he was intoxicated at the time of the accident, he argues that there was insufficient evidence for a jury to find that the Ford Focus's headlights were on at the time of the accident. Defendant argues that the lack of headlights was the cause of the accident and that the prosecution failed to prove, beyond a reasonable doubt, that the headlights were on at the time of the accident. While the prosecution's expert, Lucidi, opined that the Ford Focus's headlights were on at the time of the accident, the basis of the opinion that one intact light extracted from one of the headlights exhibited "hot shock" is unreliable.

This Court reviews the record de novo when addressing a claim of insufficient evidence. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). The Court construes the evidence in the light most favorable to the prosecutor in determining if a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *Id*. at 196; *People v Nowack*, 462 Mich 392, 399; 614 NW2d 78 (2000).

To convict a defendant of operating while intoxicated causing death, the prosecution must prove beyond a reasonable doubt that the defendant (1) operated a motor vehicle (2) on a highway or other place open to the public (3) while intoxicated; (4) the defendant voluntarily made the decision to drive knowing that he had consumed alcohol and might be intoxicated, and (5) defendant's operation of the motor vehicle caused the death. MCL 257.625; *People v Feezel*, 486 Mich 184, 193; 783 NW2d 67 (2010). To prove that the defendant's operation of the motor vehicle caused the death, the prosecution must establish that the defendant's conduct was a proximate cause of the accident or victim's death. *Id*. at 195. "If the finder of fact determines that an intervening cause supersedes a defendant's conduct such that the causal link between the defendant's conduct and the victim's injury was broken, proximate cause is lacking and criminal liability cannot be imposed." *Id*. (quotations omitted).

Defendant's argument fails for two reasons. First, Lucidi's testimony was just one part of the evidence that supported the prosecution's theory that the Ford Focus's headlights were on. Taylor and Harbeck, the passenger and the driver in the Ford Focus, testified that the headlights

were on. Defendant testified that he could not see the Ford Focus approaching. The jury plainly determined that Taylor and Harbeck were credible, and defendant was not. This Court must view all evidence in a light most favorable to the prosecution, drawing "all reasonable inferences and [making] credibility choices in support of the jury verdict." *Nowack*, 462 Mich at 400.

Second, defendant asks this Court to rely on information that was not before the jury in order to find that there was insufficient evidence to convict him. Defendant did not cross-examine Lucidi regarding the phenomenon of false positive results during hot shock tests. Therefore, defendant's theory that Lucidi's test results were unreliable was not presented to the jury. Lucidi did, however, testify to other inconsistencies that might suggest to the jury that the headlights were off. For example, Lucidi testified that he observed the headlight switch in the off position at the towing station after the accident. He also testified that there were various reasons that this might occur, including that the driver of the vehicle, the emergency personnel, or the wrecker driver could have turned the lights off before the vehicle was towed. Nonetheless, Lucidi indicated that he had 18 years of experience reconstructing crash scenes, and from this experience, he believed that at the time of impact, the left lower fender light of the Ford Focus was on, functioning as either a parking lamp or in headlight position. The jury verdict supports that it accepted his testimony as credible, which this Court will not disturb.

## III. GREAT WEIGHT OF THE EVIDENCE

Defendant argues that the evidence does not support that his intoxicated operation of his vehicle was a proximate cause of the accident. Instead, defendant argues, the evidence supports that the Ford Focus did not have its headlights on, so defendant was unable to see it, which caused the accident. We disagree.

This Court reviews "a denial of a motion for a new trial based on a great weight of the evidence argument under an abuse of discretion standard." *People v DeLisle*, 202 Mich App 658, 661; 509 NW2d 885 (1993). But defendant failed to preserve the issue by moving for a new trial in the trial court, and our review is limited to plain error affecting defendant's substantial rights. *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003). Defendant must establish that 1) an error occurred; 2) the error was plain, clear or obvious, and 3) the plain error affected the out of the proceedings. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Even so, reversal will be warranted only when the plain error resulted in the conviction of an actually innocent defendant or when the error seriously affected the fairness, integrity or public reputation of judicial proceedings regardless of the defendant's innocence. *Id*.

A jury verdict will be vacated only when the evidence does not reasonably support it, and the verdict more likely resulted from extraneous causes such as passion, prejudice, or sympathy. *DeLisle*, 202 Mich App at 661. The test is "whether the verdict was manifestly against the clear weight of the evidence." *Id*. The trial court may not set aside a jury verdict on the basis that the court disbelieves the testimony of certain witnesses. *People v Lemmon*, 456 Mich 625, 636; 576 NW2d 129 (1998).

As discussed already, the jury's verdict was supported by the evidence, including that defendant proximately caused the accident. Both Harbeck and Taylor testified that the headlights of the Ford Focus were on. The only evidence that directly refutes this is defendant's

testimony that he did not see any other vehicles on the road when he made the turn that caused the accident. Notably, defendant did not directly testify that the Ford Focus's headlights were off. Although Lucidi testified that he observed the headlight switch in the off position at the towing station after the accident, he also testified that it is "not uncommon to find physical evidence suggestive of light usage with the headlight switch in the actual off position" and provided various explanations as to how this could occur. Lucidi also testified that in his expert opinion, based on 18 years of experience, at the least, the left front lower fender light of the Ford Focus was on at the time of impact. Conflicting testimony on its own is insufficient grounds for a finding of a jury verdict against the great weight of the evidence. *Lemmon*, 456 Mich at 647; *Musser*, 259 Mich App at 219. Therefore, there is no plain error.

## IV. INSTRUCTIONAL ERROR

Defendant argues that the jury should not have been instructed on flight because the evidence does not support that he fled. We disagree.

This Court reviews de novo a claim of instructional error. *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). In reviewing such a claim of error, the instructions are read as a whole, rather than piecemeal. *Id*. An instructional error will warrant reversal only when it undermines the reliability of the verdict, i.e., when the error is outcome determinative. *People v Mitchell*, 301 Mich App 282, 288-289; 835 NW2d 615 (2013).

"It is well established in Michigan law that evidence of flight is admissible." *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995). Furthermore, a trial court may instruct a jury that flight may be evidence of consciousness of guilt so long as it also instructs the jury that evidence of flight does not prove guilt because a defendant may flee for other reasons. *People v Taylor*, 195 Mich App 57, 63-64; 489 NW2d 99 (1992).

Defendant attempts to rely on case law regarding the admissibility of evidence of flight, not whether the jury instruction should be given, to support his argument. We note that defendant did not object to evidence of his attempts to flee during questioning.[1] The relevant issue is not whether evidence of defendant's attempts to leave the crash site should have been admissible, but whether the evidence that was admitted supported the flight instruction.

The evidence supported the instruction. Several witnesses testified that defendant attempted to leave the crash site. Harbeck testified that defendant "tried to get out of his car and leave. And the officer was telling him not to go anywhere. And bystanders were kinda trying' [sic] to keep him there." Although Harbeck also testified that defendant was not running, he also reiterated that "[p]eople stopped [defendant] from gettin' away." Mark Irvin, a witness at the crash site, testified that defendant kept distancing himself from the accident and was talking on his cell phone. Irvin explained that defendant attempted to leave on three occasions, and on the third occasion, a police officer went over to defendant and instructed him to sit down and not

---

[1] Defendant did object to some hearsay statements but not to the testimony regarding defendant's attempts to flee.

-4-

leave the area. Irvin explained that defendant was walking towards a "tree line" where, on the other side, a person that Irvin thought was defendant's son had pulled up in a car. DeWeese testified that defendant "kept trying to walk, like toward the street . . . into the trailer park." Even defendant testified that he could not remember if he attempted to leave the crash site, but that he "vaguely" remembered a police officer telling him to stay still.

Moreover, even if the evidence did not support a finding that defendant attempted to flee the accident and the jury received the instruction in error, this error was not outcome determinative. The trial court instructed the jury, "[t]here has [sic] some evidence that the defendant tried to run away at the alleged crimes. This evidence does not prove guilt. A person m[a]y run for innocent reasons, such as panic, mistake or fear. However, a person may also run because of a consciousness of guilt." The trial court's instruction was not prejudicial to defendant because it presented both the possibility of innocence and guilt. See *Taylor*, 195 Mich App at 63-64. Even if the evidence did not actually support finding that defendant attempted to flee, the jury was properly instructed that the evidence of flight could support either defendant or the prosecution's theory of the case. Therefore, the instruction does not undermine the reliability of the jury's verdict. In fact, if the trial court had not instructed on flight at all, the jury may have simply considered this evidence as consciousness of guilt, without being reminded that the evidence could also be consistent with innocence.

## V. PRIOR RECORD VARIABLE (PRV) 5 SCORE

Defendant argues that defendant's Wisconsin misdemeanor charge the prosecution relied on was not a criminal case in Wisconsin at the time of its disposition; therefore, it does not qualify as a prior misdemeanor conviction. We agree.

The trial court's factual determinations when determining the applicable sentencing guidelines "are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). Additionally, "[w]hether the facts . . . are adequate to satisfy the scoring conditions prescribed by statute . . . is a question of statutory interpretation, which an appellate court reviews de novo." *Id.*

PRV 5 addresses prior misdemeanor convictions and prior misdemeanor juvenile adjudications. MCL 777.55(1); *People v Gibbs*, 299 Mich App 473, 485; 830 NW2d 821 (2013). A "prior misdemeanor conviction" is "a conviction for a misdemeanor under a law of this state, a political subdivision of this state, another state, a political subdivision of another state, or of the United States if the conviction was entered before the sentencing offense was committed." MCL 777.55(3)(a). For the purpose of PRV 5, a prior misdemeanor conviction or prior misdemeanor juvenile adjudication may be considered only if it is an offense against a person or property, a controlled substance offense, a weapon offense, or an operating or attempting to operate a vehicle while under the influence offense. MCL 777.55(2)(a) and (b); *People v Crews*, 299 Mich App 381, 397; 829 NW2d 898 (2013). Under PRV 5, if the defendant has one prior misdemeanor conviction or prior misdemeanor juvenile adjudication, then the defendant is assessed two points. MCL 777.55(1)(e). Defendant was assessed two points under PRV 5.

When this Court reviews sentencing decisions, it looks to the evidence of record at the time of sentencing. *Hardy*, 494 Mich at 444-447. Defendant claims that his conviction in

-5-

Wisconsin was not for a misdemeanor, but instead, for a civil infraction. In support of his argument, defendant submits printouts from the Wisconsin Circuit Court Access website, which states "DISORDERLY CONDUCT. This is not a criminal offense and results only in a money penalty . . . ." But the trial court was not provided with this evidence when it made its sentencing decision. The documents the prosecution provided to the trial court before sentencing indicate that defendant pleaded no contest to the Wisconsin charge, which was predicated on a domestic violence incident. The documents also indicate that if defendant successfully completed a domestic violence counseling program that the charge would be amended to a county ordinance disorderly conduct violation. The charge was, in fact, amended on May 26, 2009 as defendant's documentation verifies. So, while defendant was originally charged with a Wisconsin misdemeanor of disorderly conduct, Wis Stat Ann § 947.01, he ultimately was convicted of the local version of that offense, Waukesha County Ordinances, ch 13, art II, § 13-102(c)(8), the penalty for which is limited to a monetary "forfeiture"—i.e., a civil infraction "offense" under Wisconsin law.

In a similar circumstance, this Court ruled that a trial court abused its discretion where it scored PRV 5 at two points for a misdemeanor conviction that was later dismissed and the defendant discharged upon fulfillment of the terms and conditions of probation. *People v James*, 267 Mich App 675, 678-679; 705 NW2d 724 (2005). In *James*, the misdemeanor charge was deferred under MCL 333.7411(1), which specifically provides that "[d]ischarge and dismissal under this section shall be without adjudication of guilt and, except as otherwise provided by law, is not a conviction for purposes of this section or for purposes of disqualifications or disabilities imposed by law upon conviction of a crime . . . ." See *James*, 267 Mich App at 679. The situation at hand appears analogous: Essentially, defendant's no contest plea to the Wisconsin misdemeanor charge was dismissed and replaced with the civil infraction of disorderly conduct under a county ordinance because defendant fulfilled the terms and conditions required of him by the Wisconsin court. Hence, he did not have a prior misdemeanor conviction as required for scoring points under PRV 5. Under these facts, we conclude that defendant should not be scored two points for PRV 5 for a misdemeanor conviction which was later amended to a county ordinance violation that is only a civil infraction.

Defendant also argues that disorderly conduct is not the type of misdemeanor that qualifies for scoring under PRV 5 because it does fit any of the types of crimes under MCL 777.55(2)(a) and (b). In view of our discussion above, we need not further address this issue.

Because scoring PRV 5 at zero points results in a lower guidelines recommended sentence range, defendant is entitled to resentencing. *People v Francisco*, 474 Mich 82, 89-90; 711 NW2d 44 (2006).

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant asserts that his trial counsel's performance fell below an objective standard of reasonableness because trial counsel failed to cross-examine the prosecution's expert on the possibility of false positive results in examining the Ford Focus for hot shock and the effect of turning the light on and off after the accident, but before the investigation, and failed to argue the issue of proximate cause to the jury in her closing argument. We disagree.

To preserve the issue of ineffective assistance of counsel, a defendant must file a timely motion in the trial court for a new trial raising the issue. *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000). A defendant may also seek an evidentiary hearing when he wishes to support a claim that is not supported by the record. *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973). Because this Court denied defendant's motion to remand for an evidentiary hearing,[2] our review is limited in its review of the issue to mistakes apparent on the record. *Wilson*, 242 Mich App at 352.

When presented an issue of whether a defendant received the effective assistance of counsel, we review any of the trial court's factual findings for clear error and the constitutional question de novo. *People v Douglas*, 496 Mich 557, 566; 852 NW2d 587 (2014).

Both the United States and Michigan Constitutions grant criminal defendants the right to the effective assistance of counsel at trial. US Const, Am VI; Const 1963, art 1, § 20. A defendant claiming ineffective assistance of counsel must establish (1) that "counsel's performance fell below an objective standard of reasonableness, and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). This Court does not apply the benefit of hindsight when determining whether trial counsel performed competently. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008).

"In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Trakhtenberg*, 493 Mich at 52. Still, this Court must determine if trial counsel's strategic choices were made on the basis of incomplete investigation. *Id*. Defense counsel "always retains the duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id*. (quotations omitted).

Defendant's claim that his trial counsel's failure to "stress the proximate cause argument in closing argument" amounted to ineffective assistance of counsel is without merit. Defendant's trial counsel argued the issue of proximate cause to the jury at length in closing argument. Defendant's trial counsel did not use the words "proximate cause" to argue defendant's theory that the Ford Focus was being driven in the dark without headlights, and that that driver's action was the proximate cause of the accident, not defendant's intoxicated operation of a motor vehicle. Instead, trial counsel stated, "[i]n regards to the cause of the accident" and then continued to argue that there was evidence to support that Harbeck was the proximate cause of the accident, perhaps either for the speed he travelled or for failing to turn on the headlights of the Ford Focus.

---

[2] *People v Cortes-Azcatl*, unpublished order of the Court of Appeals, entered July 22, 2014 (Docket No. 319725).

The content of closing argument is trial strategy, which this Court will not second guess. *Horn*, 279 Mich App at 39. Furthermore, this Court will only find that trial counsel was ineffective on the basis of strategy if the strategy employed was unreasonable or unsound. *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). Here, trial counsel presented not one, but two possible theories to support that defendant's driving while intoxicated was not a proximate cause of Erwin's death. Her strategy was not unreasonable. Although his trial counsel may not have argued the issue to his standards, defendant fails to overcome the strong presumption that his trial counsel's closing arguments were sound trial strategy. *Horn*, 279 Mich App at 39.

Defendant claims that trial counsel was ineffective for failing to completely investigate the phenomenon of "hot shock" which would have resulted in her conducting a stronger cross-examination of Lucidi on specific issues and potentially discrediting his testimony. Defendant's claim fails. Defendant relies wholly on extra-record evidence in the form of articles from the internet to support his claims that trial counsel was ineffective. We cannot address this issue, however, because a party may not expand the record on appeal. *People v Gingrich*, 307 Mich App 656, 659 n 1; ___ NW2d ___ (2014). And, we will not employ hindsight to assess counsel's competence regarding matters of trial strategy. *Horn*, 279 Mich App at 39.

On the basis of the record as it stands, trial counsel's cross-examination of Lucidi was not unreasonable. Trial counsel asked several questions of Lucidi regarding the position of the headlight switch, apparently attempting to point out that the headlight switch on the Saturn remained in the on position even two days after the accident, while the Ford Focus's headlight switch was off, to indicate that no one had tampered with the switches.

In any event, even if defendant could establish that trial counsel's performance was deficient for failing to question Lucidi on the phenomenon of false positives and the effect of turning the headlights on and off after an accident, defendant cannot establish that "but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. Lucidi's expert testimony was not the sole evidence that the Ford Focus's headlights were on at the time of the accident. Taylor and Harbeck, the passenger and the driver in the Ford Focus, testified that the headlights were on. Although expert testimony supported the prosecution's theory of proximate cause, the expert testimony was not integral for the jury's finding defendant guilty. Even if trial counsel had expertly cross-examined Lucidi on hot shock, there was sufficient evidence in the record upon which the jury could reasonably rely to determine that defendant's intoxicated operation of his vehicle was a proximate cause of the accident.

We affirm defendant's conviction but remand for resentencing. We do not retain jurisdiction.

/s/ Joel P. Hoekstra
/s/ Jane E. Markey
/s/ Pat M. Donofrio