PEOPLE v WILSON

Docket No. 213333. Submitted January 11, 2000, at Lansing. Decided
August 25, 2000, at 9:15 A.M.

Calvin G. Wilson was convicted by a jury in the Ingham Circuit Court,
Peter D. Houk, J., of felony murder, armed robbery, and possession
of a firearm during the commission of a felony. The defendant
appealed.

The Court of Appeals *held*:

1. The defendant's trial counsel did not render ineffective assis-
tance by failing to object when a prosecution witness, in recount-
ing his interview by the police, testified about the police officer's
picture book and the defendant's photograph in it. The testimony
did not improperly disclose to the jury that the defendant had prior
contact with the police because there was never any reference to
"mug shot," "mug book," "booking photograph," or any other lan-
guage intimating that the police had taken the picture in any previ-
ous investigation.

2. The trial court did not commit plain error that affected the
defendant's substantial rights in not suppressing the testimony of
an accomplice. The benefits received by the accomplice from a
plea bargain, in which a murder charge was dismissed in exchange
for the accomplice's testimony against the defendant and the
accomplice's guilty plea to charges of armed robbery and felony
firearm, cannot be construed as the payment of a fee to a witness
under MCL 775.7; MSA 28.1244, which prohibits monetary disburse-
ments by a county treasurer to a prosecution witness except by
court order for the reasonable expenses incurred by a witness who
is from out of state or who is poor.

3. The defendant's convictions of both armed robbery and felony
murder do not violate protections against double jeopardy under
the federal and state constitutions. The armed robbery underlying
the felony-murder conviction related to the robbery of the murder
victim and is distinct from the armed robbery conviction related to
a second victim.

Affirmed.

CRIMINAL LAW — PROSECUTION WITNESSES — FEES.

> A prosecution witness in a criminal trial who gives testimony against the defendant in exchange for the dismissal of a charge against the witness, in receiving the benefits of the plea bargain, does not receive a fee within the meaning of the statute that prohibits monetary disbursements to prosecution witnesses except by court order for the reasonable expenses incurred by a witness who is from out of state or who is poor (MCL 775.7; MSA 28.1244).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Stuart J. Dunnings, III*, Prosecuting Attorney, and *Samuel R. Smith*, Chief Appellate Attorney, for the people.

State Appellate Defender (by *Randy E. Davidson*), for the defendant on appeal.

Before: WHITBECK, P.J., and HOEKSTRA and OWENS, JJ.

PER CURIAM. A jury convicted defendant Calvin Greg Wilson of felony murder, MCL 750.316(1)(b); MSA 28.548(1)(b), armed robbery, MCL 750.529; MSA 28.797, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). He appeals as of right. We affirm.

### I. BASIC FACTS AND PROCEDURAL HISTORY

On October 13, 1997, Wilson, then seventeen years old, and James Jones, then nineteen years old, robbed the One Stop Party Store in Lansing. During the offense, Wilson shot and killed one of the store's owners, Saman Samara. Calvin Williams, a friend of Wilson's uncle, was coincidentally at the store with Wilson's uncle during the robbery and shooting. Williams was in a car outside the store when he saw a man wearing a hood run out of the store. Williams knew Wilson, but could not identify him at the scene of the

shooting. Sometime later, the Lansing police contacted Williams to identify the store robber and evidently showed him pictures of different suspects, including Wilson and Jones. Jones, who pleaded guilty of armed robbery and felony-firearm in return for dismissal of a murder charge, claimed that either Wilson or another man, Suttles, came up with the idea for the offense about one month before they committed it, and they mentioned it again about fifteen minutes before the robbery. At trial, Wilson claimed that the killing was not murder because he lacked the requisite state of mind. Nevertheless, the jury convicted him of all three crimes.

Wilson raises three issues on appeal. First, he claims that his trial counsel was ineffective because counsel failed to object to Williams' testimony concerning how he identified Wilson. Second, he claims that the trial court should have suppressed Jones' testimony. Third, he claims that the constitutional protection against double jeopardy requires vacating his armed robbery conviction.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. PRESERVATION OF THE ISSUE AND STANDARD OF REVIEW

Wilson made a timely motion for a new trial, raising the issue of ineffective assistance of counsel. This issue is therefore preserved for review. See *People v Hurst*, 205 Mich. App 634, 641; 517 NW2d 858 (1994). However, because the trial court did not hold an evidentiary hearing, our review is limited to the facts on the record. *People v Hedelsky*, 162 Mich App 382, 387; 412 NW2d 746 (1987).

## B. THE "MUG SHOTS" AND PRIOR BAD ACTS

Wilson argues that his trial counsel was ineffective in failing to object to the following line of questioning that the prosecutor pursued with Williams in order to determine how he identified Wilson:

*Q.* Mr. Williams, let's get back to when the police visited you at the Radisson Hotel when you were working there. Did they show you *some pictures*?

*A.* Yeah, he did. But before he showed me *the pictures*, he asked me about some names. But, yeah, he did show me *some pictures.*

*Q.* Did he use the name Yank [Wilson's nickname] or Calvin Wilson when he was talking to you?

*A.* Well, he said Yank when he had *the book* closed. When his *picture book* was closed, he was askin' me do you know James Jones or do you know Calvin Wilson? And then he had some other boy, Williams somebody. Anyway, it was like—and he—he had *his book* closed. And then, really, I didn't know—I didn't know—I didn't even know that Calvin Wilson by name, you know. With *the book* closed, I didn't know him by name.

\* \* \*

*Q.* When the police came down to the Radisson Hotel, Mr. Williams, did they show you *a picture* of Yank, the young man that you've just described and identified for us here?

*A.* Well, they opened *the book*. First they showed me one *picture* of—of a fellow they said was James Jones, which I didn't know him. And the second *picture*, Calvin Wilson, which was Yank, and I told'em, yeah, I know him. I know his father, you know. And then the third *picture*, William somebody—somebody Williams . . . . [Emphasis supplied.]

Wilson claims the testimony improperly disclosed to the jury his prior unrelated contact with the police because the jury naturally inferred that the picture book was what is commonly known as a book of

"mug shots," pictures taken when the police process individuals after arrest.

In order to merit reversing a criminal conviction because of ineffective assistance of counsel, a defendant must show that his trial counsel's conduct fell below an objective standard of reasonableness and was prejudicial, thereby denying the defendant a fair trial. See *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). With this standard in mind, we find Wilson's argument flawed. He presupposes that the jury believed that Williams said that Wilson's picture was a mug shot or appeared in a book of mug shots. Williams, however, never referred to a "mug shot," "mug book," "booking photograph," or used any other language intimating that the police had taken the picture in any previous investigation. Williams merely referred to looking at photographs in "the book." This term had no logical capacity to inform the jury of Wilson's previous contact with the police, much less of the nature of any allegedly "prior bad acts." Thus, even if it was error for defense counsel to fail to object to this testimony, Wilson cannot show that the error prejudiced him and is, therefore, not entitled to relief.

### III. TESTIMONY SUPPRESSION

#### A. PRESERVATION OF THE ISSUE AND STANDARD OF REVIEW

Wilson argues that the trial court should have suppressed Jones' testimony because, as the alleged accomplice in this shooting, he testified for the prosecution in exchange for leniency. He relies on MCL 775.7; MSA 28.1244, which bans paying "fees" to witnesses who testify in criminal proceedings, to make

this argument by construing any benefit a witness receives from testifying as a "fee" under this statute. Unfortunately, Wilson failed to preserve this issue by raising it at trial. *People v Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994). Thus, our review is limited to determining whether the trial court's failure to suppress Jones' testimony was a plain error affecting his substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Only if we could categorize the trial court's decision as this sort of error and conclude that it was outcome determinative could we reverse his conviction. *Id.*

To the extent that we must interpret the statute to determine whether the trial court erred, our review is de novo. *People v Hammons*, 210 Mich App 554, 557; 534 NW2d 183 (1995).

### B. AN OFFER OF LENIENCY AS A "FEE"

MCL 775.7; MSA 28.1244 provides:

> Whenever any person shall attend any court of record as a witness in behalf of the people of this state, upon request of the public prosecutor, or upon subpoena, or by virtue of a recognizance for that purpose, and it shall appear that such person has come from any other state or territory of the United States, or from any foreign country or that such person is poor, the court may, by an order to be entered on its minutes, direct the county treasurer of the county in which the court may be sitting, to pay such witness such sum of money as shall seem reasonable for his expenses; and *no fees shall be allowed or paid to witnesses on the part of the people in any criminal proceeding or prosecution except as is provided in this section and act.* [Emphasis supplied.]

The threshold question we must answer to address Wilson's claim is whether an offer of leniency is a prohibited "fee" under this statute.

As the Supreme Court explained in *People v Denio*, 454 Mich 691, 699; 564 NW2d 13 (1997):

> The purpose of statutory interpretation is to give effect to the intent of the Legislature. *People v Morris*, 450 Mich 316, 326; 537 NW2d 842 (1995). If a statute is clear, we enforce it as plainly written. *Id.* However, if a statute is susceptible to more than one interpretation, we must engage in judicial construction and interpret the statute. *Id.*

The first part of MCL 775.7; MSA 28.1244 is unambiguous. It clearly permits a court to order the county treasurer "to pay" for a prosecution witness' expenses if that witness is poor, comes from out of the state, or comes from out of the country. Because the statutory language prohibiting certain fees immediately follows this initial language permitting some fees, we infer that they have some sort of natural relationship. The relationship apparent from the context of the statute as a whole is that the Legislature only intended to permit cash disbursements to pay for certain expenses witnesses incur in order to testify for the prosecution. There are no other circumstances meriting a cash payment under this provision. Thus, under this statute, a prosecutor may not obtain a court order to pay a witness, who is both from the state and is not poor, for expenses incurred while testifying on behalf of the prosecution. Nor can the prosecutor arrange to pay a witness if the payment does not reimburse the witness for expenses incurred while testifying on behalf of the prosecution.

We observe that this statutory scheme is sensible. In one respect, it avoids the appearance of impropriety that might arise if prosecutors paid witnesses for their testimony. At the same time it acknowledges that some necessary prosecution witnesses may not be able to testify absent financial assistance in traveling to the courthouse. Accordingly, the statute strikes a balance by limiting payments only to those necessary expenses incurred to testify for the prosecution. We emphasize that the text of the statute, by referring to fees and payments, refers only to monetary disbursements and not to intangible benefits that a witness might receive from testifying. This interpretation of the statute's language fits well with the common meaning of the words "fee," "pay," and "paid." See *Random House Webster's College Dictionary* (2d ed).

While we acknowledge that Jones did receive a benefit, potential leniency, for testifying, this case simply does not involve a monetary disbursement prohibited under MCL 775.7; MSA 28.1244. That this statute does not mention nonmonetary benefits distinguishes it from a somewhat similar federal statute, 18 USC 201(c)(3), which prohibits a prosecutor from "directly or indirectly" giving "anything of value" in exchange for witness testimony. But see *United States v Lowery*, 166 F3d 1119, 1122-1124 (CA 8, 1999) (overturning a district court decision that concluded that a plea agreement for leniency was something "of value" and could not be used to induce testimony). Moreover, even if the prosecutor's offer in this case was a "fee" within the meaning of the statute, the statute does not prescribe a consequence for extending such a benefit. Presumably, an improperly paid fee would, in ordinary circumstances, be

returned to the county treasurer. Jones never received anything through the Ingham County treasurer. It would be ludicrous to attempt to fit the plea-bargaining process and resulting agreement into the form of actions described in the statute. Further, even if Jones' plea bargain was a "fee," the plain language of the statute does not contemplate requiring a trial court to prevent a witness from testifying if the witness receives an intangible benefit from the prosecutor. Thus, we see no plain error in the trial court's failure to prohibit Jones from testifying.

We also note that allowing a codefendant to testify in exchange for a plea bargain or sentence agreement is a common practice, which Michigan courts have sanctioned for some time. See generally *People v Crawl*, 401 Mich 1, 34; 257 NW2d 86 (1977). When an accomplice testifies, courts ordinarily allow the defense to inform the jury that the prosecution secured the testimony by entering into a plea bargain or other favorable agreement. See *People v Mumford*, 183 Mich App 149, 152; 455 NW2d 51 (1990); see also *People v Manning*, 434 Mich 1, 7-8; 450 NW2d 534 (1990).

Here, the prosecutor did disclose to the jury that Jones had entered into a plea bargain in exchange for his testimony. The prosecutor asked Jones what became of the charges against him from his part in the robbery. Jones disclosed to the jury, "I pled guilty to armed robbery and felony-firearm and the murder charge was dropped" and that he "had to testify in any companion cases and that it's a 15-year minimum on the armed robbery." Moreover, he disclosed that he would have an additional two-year sentence imposed for the felony-firearm conviction. Further,

the defense had the opportunity to cross-examine Jones. The trial court then appropriately instructed the jury that it could consider this plea agreement in evaluating Jones' testimony. Wilson received all appropriate safeguards for this accomplice testimony, militating against any conclusion that the trial court plainly erred in allowing Jones to testify regardless of the meaning of MCL 775.7; MSA 28.1244.

Additionally, the prosecutor's case did not depend heavily on Jones' testimony. Although Wilson claims that Jones contradicted his own testimony that the shooting was accidental, excluding Jones' single statement that Wilson returned to the car and said, "I had to shoot him," would not have likely altered the jury's decision. There was ample circumstantial evidence from which the jury could have inferred Wilson's intent, including his admission that he pointed his gun at Samara's face and squeezed the trigger. After the shooting, Wilson went to great lengths to hide his involvement in the crime. Jones' testimony was such a small part of the prosecutor's case that, during closing arguments, the prosecutor emphasized other testimony to prove intent. Even if admitting Jones' statements was plain error, it was not outcome determinative and therefore does not provide a basis to reverse his conviction on appeal.

### IV. DOUBLE JEOPARDY

#### A. PRESERVATION OF THE ISSUE AND STANDARD OF REVIEW

Wilson also contends that armed robbery was the predicate felony for his felony-murder conviction and that convicting him of both offenses violated the prohibition against double jeopardy. Wilson failed to

raise the double jeopardy issue at trial. Although this alleged error is constitutional in nature, our review still revolves around determining if there was plain error affecting Wilson's substantial rights. *Carines, supra* at 762-763, 774.

### B. THE PREDICATE FELONY

Wilson's legal premise is correct. Of the different types of protections provided by the double jeopardy prohibitions in the Fifth Amendment and Const 1963, art 1, § 15, the protection against multiple punishments potentially applies in this case. See *People v Torres*, 452 Mich 43, 64; 549 NW2d 540 (1996). As we said in *People v Warren*, 228 Mich App 336, 354-355; 578 NW2d 692 (1998):

> Convictions of both felony murder and the underlying felony offend double jeopardy protections. *People v Gimotty*, 216 Mich App 254, 259; 549 NW2d 39 (1996). When a defendant is erroneously convicted of both felony murder and the underlying felony, the proper remedy is to vacate the conviction and sentence for the underlying felony. *Id.* at 259-260.

We cannot agree, however, that the jury convicted Wilson of both robbing Samara and killing him.

The trial court gave careful instructions to the jury. First it restated the three charges at issue, clarifying that the jury had to consider "each crime separately in light of all the evidence in the case." The trial court then gave the jury the choice of convicting Wilson of first-degree premeditated murder, felony murder, second-degree murder, involuntary manslaughter, or acquitting him. The lengthy instructions on the law of felony murder included the trial court's instruction

that the jury had to find that Wilson was committing
an armed robbery at the time he killed Samara, mean-
ing that

> the Defendant must have been either committing or helping
> someone else commit the crime of armed robbery. In this
> particular case, that means the armed robbery must still
> have been in progress. To help means to perform acts or
> give encouragement, before or during the commission of
> the crime, that aids or assists in its commission. At the time
> of giving aid or encouragement, the Defendant must have
> intended the commission of the armed robbery.

When the trial court separately instructed the jury on
the crime of armed robbery, it specifically referred to
Wilson committing armed robbery against an
employee of the store, Mary Beeman, not Samara, in
accordance with the charge in the criminal informa-
tion that specified that Wilson committed armed rob-
bery exclusively against Beeman.

When read as a whole, the instructions informed
the jury in a reasonably clear manner that the armed
robbery charge for the offense against Beeman was
not the same armed robbery used as a predicate fel-
ony for the murder charge. See *People v Caulley*, 197
Mich App 177, 184; 494 NW2d 853 (1992). The evi-
dence presented to the jury during the trial also made
it apparent that there was more than one armed rob-
bery in that there were two victims from whom Wil-
son demanded money while brandishing a gun. Cer-
tainly, the trial court could have made the instruc-
tions clearer by indicating that the jury had to find
that Wilson killed Samara while committing an armed
robbery *against Samara*. However, fairness, not
perfection, is the standard for jury instructions. See
*People v Head*, 211 Mich App 205, 210-211; 535 NW2d

563 (1995). In the circumstances present in this case, we see no evidence that any error in the trial court's instructions resulted in an improper decision by the jury to convict Wilson of felony murder and the predicate felony, which was robbing *Samara* while armed, simply because it also convicted him of armed robbery against Beeman. The instructions were fair.

Affirmed.