# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 28, 2015

Plaintiff-Appellee,

v

No. 321842
Kent Circuit Court
LC No. 13-009772-FC

KENNETH EDWARD BOLTON, III,

Defendant-Appellant.

Before: SERVITTO, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of first-degree criminal sexual conduct (CSC), MCL 750.520b(1)(f) (force or coercion; personal injury).[1] Defendant was sentenced as a second-offense habitual offender, MCL 769.10, to 28 to 90 years' imprisonment. We affirm.

At approximately 11:00 p.m. on September 29, 2013, defendant met the victim, a 50-year-old woman, near St. James Catholic Church, which is located in Grand Rapids, Michigan. Defendant and the victim had never met each other before that time. Defendant asked the victim whether she had a cellular telephone he could use. After she answered no, defendant hit her in the head and dragged her by her hair and hooded sweatshirt into a field near the church. Then, defendant pulled the victim's pants down, took off her shoes and underwear, and told her to put a condom on him. She complied. Defendant then put his penis inside the victim's vagina. The victim testified that she never consented to sex with defendant.

Shaine Cartwright and Scott Burkman left their apartment at approximately 11:00 p.m. that night. Their apartment was across the street from the church. As they walked outside, they heard a woman's "blood curdling screams" coming from behind the church. Cartwright knew Christopher Wright, a clergyman who was living in the rectory of the church. Cartwright called Wright and Wright went outside. He saw defendant thrusting on top of a woman, and the woman was screaming for help. Wright called 911 and the police arrived. Adam Ickes was the police officer who arrested defendant. Defendant gave several inconsistent accounts to Ickes of

---

[1] Defendant was acquitted of a second count of first-degree CSC.

-1-

events that night. For example, defendant told Ickes that the victim was his girlfriend, but then told him she was a prostitute. A medical examination of the victim indicated that she suffered over 20 injuries on her body resulting from defendant. At trial, defendant maintained that the victim was a prostitute and that she consented to have sex with him in exchange for $15.

Before trial, the prosecution offered defendant a dismissal of the second count of first-degree CSC and dismissal of the supplemental information charging defendant as a second-offense habitual offender, in exchange for defendant pleading guilty to the first count of first-degree CSC. The prosecution estimated that defendant's minimum sentence range under the legislative guidelines would be 108 to 180 months without the supplemental information, but would be 108 to 225 months with the supplemental information. Defendant's counsel stated that he believed that the prosecution's estimate of the minimum sentence ranges was correct. At sentencing, after scoring the prior record variables (PRVs) and the offense variables (OVs), the trial court determined that defendant's minimum sentence range under the legislative guidelines was 171 to 356 months.

Defendant first argues that his counsel was ineffective for estimating during plea negotiations that defendant's recommended sentence range would be 108 to 225 months with the supplemental information charging defendant as a second-offense habitual offender. Because no evidentiary hearing has been held on defendant's claim, our review of the claim is limited to facts on the record. *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000). "In all criminal prosecutions, the accused shall enjoy the right to . . . the Assistance of Counsel for his defense." US Const, Am VI. "[T]he right to counsel is the right to effective assistance of counsel." *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984) (quotation marks omitted). "[T]he proper standard for attorney performance is that of reasonably effective assistance." *Id.* at 687. Michigan law does not grant a different level of protection with regard to assistance of counsel from that of federal law. *People v Pickens*, 446 Mich 298, 318; 521 NW2d 797 (1994). A defendant is entitled to effective assistance of counsel both at trial and "in the plea-bargaining process." *People v Douglas*, 496 Mich 557, 591-592; 852 NW2d 587 (2014), citing *Lafler v Cooper*, 566 US ___, ___; 132 S Ct 1376, 1384; 182 L Ed 2d 398 (2012).

In a claim for ineffective assistance of counsel, the defendant has the burden of showing "that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment . . . ." *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002) (quotation marks omitted). Specifically, counsel's performance must fall "below an objective standard of reasonableness." *Strickland*, 466 US at 688. Second, the defendant must show that "the deficient performance prejudiced the defense." *LeBlanc*, 465 Mich at 578 (quotation marks omitted). To show such prejudice in the context of the plea-bargaining process,

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. [*Douglas*, 496 Mich at 592, quoting *Lafler*, 566 US at ___; 132 S Ct at 1385.]

-2-

However, a defense counsel's performance at plea negotiations does not fall "below an objective standard of reasonableness," *Strickland*, 466 US at 688, merely because counsel incorrectly predicted the defendant's sentence; rather, "[c]ounsel's incorrect prediction concerning defendant's sentence . . . is not enough to support a claim of ineffective assistance of counsel." *In re Oakland Co Prosecutor*, 191 Mich App 113, 124; 447 NW2d 455 (1991).

Based upon *In re Oakland Co Prosecutor*, 191 Mich App at 124, defense counsel's agreement with the prosecution's stated estimate of the minimum sentence guidelines did not amount to a performance that fell "below an objective standard of reasonableness." *Strickland*, 466 US at 688. Furthermore, even if counsel did err in making this estimate, defendant has not shown that this performance "prejudiced the defense," *LeBlanc*, 465 Mich at 578, because he has not shown that "but for the ineffective advice of counsel there is a reasonable probability that . . . [he] would have accepted the plea . . . ." *Douglas*, 496 Mich at 592.

There is no indication on the record that defendant would have accepted the prosecution's plea offer even if he had known exactly what his guidelines range would be after losing at trial. Defendant rejected the plea offer and chose to go to trial immediately after the prosecution made its offer, even though the trial court told defendant that he could have five minutes with his counsel to discuss the matter. Defendant indefatigably maintained his own innocence throughout trial. And, at his sentencing hearing, defendant stated that he hoped that "one day someone will apologize to me . . . for what's been done to me."

Indeed, "the record amply supports the conclusion that, even had the defendant been properly advised of the consequences he faced if convicted at trial, it was not reasonably probable that he would have accepted the prosecution's plea offer" because he maintained his own innocence throughout the proceedings and appeared to never even consider the possibility of accepting a plea. *Douglas*, 496 Mich at 598. Therefore, defendant has not shown that "but for the ineffective advice of counsel there is a reasonable probability that . . . [he] would have accepted the plea . . . ." *Douglas*, 496 Mich at 592. Defendant's claim of ineffective assistance of counsel is without merit.

Defendant next argues that the prosecution committed misconduct by being presumptively vindictive by arguing at sentencing for an increase in defendant's OV score. We review this unpreserved claim of error for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999). "[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007).

Defendant argues in the alternative that his right to due process was violated when the prosecution did not keep its word to defendant, thereby misleading him into believing his guidelines range would not exceed 225 months, even after trial. "[F]undamental fairness requires that promises made during plea-bargaining and analogous contexts be respected . . . ." *Ryan*, 451 Mich at 41 (quotation omitted). The prosecution violates a defendant's right to due process when it punishes him "for asserting a protected statutory or constitutional right." *People v Ryan*, 451 Mich 30, 35; 545 NW2d 612 (1996). This is known as prosecutorial vindictiveness. *Id.* at 36. However, the fact that the prosecution merely argued at sentencing for a change in the

scoring of defendant's OVs does not warrant a presumption of prosecutorial vindictiveness. Cf. *People v Goeddeke*, 174 Mich App 534, 537; 436 NW2d 407 (1988).

In this case, defendant has failed to indicate what "promise" was made by the prosecution and in what way it failed to keep its word to defendant and has, therefore, abandoned this argument. See, e.g., *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001). The prosecution stated what it had "estimated" defendant's guidelines range to be and indicated that upon a successful plea, it would make a sentencing recommendation that the trial court stay within the estimated guidelines. While the estimated guidelines were apparently incorrectly estimated, there is no indication that the prosecution gave its word that they were correct. Moreover, if defendant intends to argue that the prosecution failed to keep a promise to not seek to increase defendant's guidelines range beyond what was estimated at plea negotiations, there is no indication on the record that the prosecution ever made such a promise. Because the factual predicate for defendant's argument is unsupported, his argument necessarily fails. See, *People v Geno*, 261 Mich App 624, 629; 683 NW2d 687 (2004).

Finally, defendant argues that the trial court erred in assessing 50 points for OV 7 (aggravated physical abuse). A trial court's factual determinations in scoring the sentencing guidelines are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "The clear error standard asks whether the appellate court is left with a definite and firm conviction that a mistake has been made." *People v Rhodes*, 495 Mich 938, 938; 843 NW2d 214 (2014).

A score of 50 points for OV 7 is appropriate where "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). "A trial court can properly assess 50 points under OV 7 if it finds that a defendant's conduct falls under one of the four categories of conduct listed in [MCL 777.37(1)(a)]." *Hardy*, 494 Mich at 439-440. Although the Legislature did not define "excessive brutality," in MCL 777.37, this Court has previously interpreted the term to mean "savagery or cruelty beyond even the 'usual' brutality of a crime." *People v Glenn*, 295 Mich App 529, 533; 814 NW2d 686 (2012), rev'd on other grounds *Hardy*, 494 Mich 430.

A preponderance of the evidence supported the trial court's finding that defendant treated the victim with excessive brutality. *Hardy*, 494 Mich at 438. Conviction of first-degree CSC under MCL 750.520b(1)(f) required defendant to cause "personal injury" to the victim and use "force or coercion . . . to accomplish sexual penetration." MCL 750.520b(1)(f). The victim here testified that defendant hit her in the head, that she fell to the ground, and that defendant dragged her by her hair and her hooded sweatshirt into a field. She testified that defendant told her as he dragged her that he would "screw [her] in the ass," that he pulled some of her hair out, and that when they arrived in the field defendant continuously hit her. A medical examination of the victim revealed that she had more than 20 injuries and that these injuries were not inconsistent with defendant having dragged, beaten, and sexually assaulted her.

This is beyond mere "personal injury" and "force or coercion . . . to accomplish sexual penetration." MCL 750.520b(1)(f). Defendant dragged, beat, and threatened the victim far beyond what was necessary to commit first-degree CSC pursuant to MCL 750.520b(1)(f). Thus,

-4-

a preponderance of the evidence suggests that defendant's brutality exceeded what was required for him to commit first-degree CSC pursuant to MCL 750.520b(1)(f). *Glenn*, 295 Mich App at 533; *Hardy*, 494 Mich at 443. Because a preponderance of the evidence supports a finding that defendant treated the victim with excessive brutality, the trial court did not clearly err in assessing 50 points for OV 7. *Hardy*, 494 Mich at 438.

Affirmed.

/s/ Deborah A. Servitto
/s/ Jane M. Beckering
/s/ Mark T. Boonstra