*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

FREDERICK BRYANT BILES,

        Defendant-Appellant.

UNPUBLISHED
January 28, 2021

No. 345691
Wayne Circuit Court
LC No. 15-000598-01-FC

Before: FORT HOOD, P.J., and CAVANAGH and TUKEL, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of voluntary manslaughter, MCL 750.321, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1). Defendant was sentenced to 10 to 15 years' imprisonment for his manslaughter conviction, to be served consecutively to his 2-year sentence for felony-firearm.

Defendant was tried three times. The first trial resulted in a hung-jury. Defendant was convicted in the second trial of second-degree murder, MCL 750.317, assault with intent to murder, MCL 750.83, and felony-firearm. Those convictions were reversed by this Court in a previous appeal of right. *People v Biles*, unpublished per curiam opinion of the Court of Appeals, issued May 9, 2017 (Docket No. 329916). The present appeal involves the third trial.[1] We vacate defendant's convictions and judgment of sentences, and remand for a new trial.

## I. FACTS AND PROCEDURAL HISTORY

This case concerns the November 18, 2014 shooting and death of Andrew Baker (the victim), the former boyfriend of defendant's daughter, Bryanna Byars. That night, defendant learned the victim and Bryanna had an argument and the victim may have been physical with Bryanna. As a result, defendant and his son, Brandon Byars, went to Bryanna's apartment to check

---

[1] Only the third trial is at issue in this appeal; therefore, when we refer to "the trial," we refer to the third trial.

on the situation. According to defendant, he was carrying a .40 caliber Glock pistol at the time because he had a concealed pistol license (CPL) and always carried a firearm. When defendant and Brandon arrived at the apartment, Brandon began physically fighting with the victim in the bedroom.

Brandon and Bryanna testified about the events at issue. Bryanna testified that, as Brandon and the victim fought, she stood in the doorway telling them to stop fighting. While in the doorway, Bryanna heard defendant come into the apartment. Suddenly, she heard a gunshot from behind her and, as she turned around, she saw defendant. At that point, Bryanna realized the victim had been shot in his right arm, and she began pushing defendant. Brandon, on the other hand, testified defendant came into the bedroom, pushed the victim off Brandon, and the victim "hopped up in [defendant's] face," prompting defendant to push the victim backwards. According to Brandon, Bryanna was on defendant's side and grabbing him, trying to get him to "stop." Brandon testified that defendant then shot the victim in the right arm, which pushed the victim's arm back forcefully. Approximately five seconds later, Brandon, who said he was in a daze after the first shot, heard a second shot. Brandon then saw a bullet wound in the victim's chest. Bryanna testified that just before the second shot was fired, she was struggling with defendant for control of the gun in an attempt to prevent any more shooting. Bryanna pushed defendant out of the apartment after the second shot, and defendant and Brandon left the scene. The next day, defendant, who was in the Army Reserve, drove to Indiana to turn himself in at his Army base, but defendant was confronted by Indiana police officers before he reached the base and he surrendered.

During the trial, defendant's counsel argued for a jury instruction that manslaughter was a lesser included offense of the second-degree murder charge, asserting the evidence showed provocation, self-defense, and that defendant acted in the heat-of-the-moment. The trial court agreed and concluded a manslaughter instruction was necessary because there was evidence of "some provocation and some reason to defend one self." The trial court also provided an instruction for self-defense as it related to the second-degree-murder charge, but the trial court did not instruct as to self-defense with regard to the other charges of assault with intent to murder and felony firearms, nor did the trial court instruct as to self-defense regarding the lesser-included offense of manslaughter. Trial counsel did not request self-defense instructions for any of those other charges and affirmatively expressed that he had no objection to the instructions as given. Defendant was found not guilty of second-degree murder and assault with intent to murder, but was found guilty of manslaughter and felony-firearm.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that his trial counsel was ineffective for failing to request and obtain self-defense jury instructions for voluntary manslaughter and felony-firearm. We agree.

## A. STANDARD OF REVIEW

Regardless of whether a claim of ineffective assistance is properly preserved, if the trial court did not hold a *Ginther*[2] hearing, "our review is limited to the facts on the record." *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000). "A claim of ineffective assistance of counsel is a mixed question of law and fact. A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008).

## B. ANALYSIS

A "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

> Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. To establish an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. [*People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012) (citations omitted).]

The "reasonable probability" standard can be satisfied by less than a preponderance of the evidence. *People v Trakhtenberg*, 493 Mich 38, 56; 826 NW2d 136 (2012).

Defendant argues, and the prosecution concedes, that trial counsel's failure to request and obtain self-defense jury instructions for the voluntary manslaughter and felony-firearm charges, despite obtaining a self-defense instruction for second-degree murder, fell below an objective standard of reasonableness and, thus, constituted deficient performance. Thus, the only issue before us is whether defendant suffered the requisite prejudice—a reasonable probability that, but for trial counsel's deficient performance, the result of the proceeding would have been different. *People v Jackson*, 292 Mich App 583, 600-601; 808 NW2d 541 (2011).

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Chenault*, 495 Mich 142, 150-151; 845 NW2d 731 (2014). (quotation marks and citation omitted). To meet this standard, a defendant does not have to show that the evidence would have ensured acquittal, *id.*, nor is a defendant even required to show that counsel's failure more likely than not altered the outcome, *Harrington v Richter*, 562 US 86, 112; 131 S Ct 770; 178 L Ed 2d 624 (2011). Nevertheless, "[t]he likelihood of a different result must be substantial, not just conceivable." *Id.* "[W]here there is relatively little evidence to support a guilty verdict to begin with (e.g., the uncorroborated testimony of a single witness), the magnitude of errors

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973). No *Ginther* hearing was held in this case.

necessary for a finding of prejudice will be less than where there is greater evidence of guilt." *Trakhtenberg*, 493 Mich at 56.

A defendant is entitled to a properly instructed jury. *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1999), mod on other grounds 450 Mich 1212 (1995). "[T]he trial court is required to instruct the jury concerning the law applicable to the case and fully and fairly present the case to the jury in an understandable manner." *Id*. Accordingly, jury instructions "must include all the elements of the offenses charged against the defendant and any material issues, defenses, and theories that are supported by the evidence." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007) (citation omitted). Imperfect instructions are not erroneous if they fairly present the issues and sufficiently protect the defendant's rights. *People v Clark*, 274 Mich App 248, 255-256; 732 NW2d 605 (2007). Additionally, an instructional error does not warrant reversal "unless refusal to take this action appears to the court inconsistent with substantial justice." MCR 2.613(A); see also *People v Muhammad*, 498 Mich 909; 870 NW2d 729 (2015). It is the defendant's burden to prove that an error resulted in a miscarriage of justice. *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010).

There is a reasonable probability that, had trial counsel requested and obtained a self-defense jury instruction for the voluntary manslaughter and felony-firearm charges, the result of defendant's trial would have been different. Deadly force can be used in self-defense if the defendant "honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual." MCL 780.972(1)(a). The prosecution argues that, if defendant did not intend to kill the victim, then the killing was accidental and, therefore, that it would not require a self-defense instruction.[3] Specifically, the prosecution relies on defendant's testimony that the second shot was fired accidentally as he and Bryanna struggled over the firearm, and points to caselaw stating that to find a defendant acted in self-defense requires " 'a finding that the defendant acted intentionally, but that the circumstances justified his actions.' " *People v Guajardo*, 300 Mich App 26, 43; 832 NW2d 409 (2013), quoting *People v Heflin*, 434 Mich 482, 503; 456 NW2d 10 (1990). Thus, the prosecution asserts that because defendant testified the shooting was accidental, he did not act intentionally, and therefore his actions could not have been taken in self-defense. The jury, however, found defendant guilty of voluntary manslaughter, which means a defendant "killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *People v Mendoza*, 468 Mich 527, 535; 664 NW2d 685 (2003). Indeed, voluntary manslaughter requires an intentional act to cause the death. See *id*. at 535-536 (comparing voluntary and involuntary manslaughter).

Thus, it appears that the jury, in convicting defendant of voluntary manslaughter, rejected defendant's testimony that the second shot was fired accidentally, and, rather, believed it was fired

---

[3] It is not entirely clear, therefore, why the prosecution then concedes why counsel's failure to request such an instruction constituted deficient performance, as opposed to merely lack of prejudice. We do not rely on the concession, but rather independently conclude that it was ineffective assistance, on the facts of this case, for counsel not to request the self-defense instruction for the other charges and the lesser-included offense.

intentionally. Nevertheless, the jury could have credited Bryanna's testimony or Brandon's testimony, or portions of both of their testimony, and that testimony reasonably could have led a jury to believe that defendant justifiably used deadly force to protect Bryanna, or Brandon, or both. Testimony established that the victim was "bigger" and younger than defendant, who had injuries from his service in the Army, and that the victim had allegedly gotten physical with Bryanna and was seen at least restraining Brandon, but also possibly hitting him. Brandon testified that after defendant pushed the victim off of him, the victim "hopped up in [defendant's] face." Brandon also saw the victim "bobbing back and forth like he [was] ready to make a move." Additionally, Brandon testified that, after the first shot, he could see the victim in his peripheral vision pacing back and forth. This was consistent with defendant's testimony, which established that, after defendant pushed the victim off Brandon, the victim "clutch[ed] his fist," and "jumped up, [and] lunged at [defendant]," hitting defendant in the chest and pushing him back. When defendant put his hands up, the victim backed off and began pacing back and forth "from the head of the bed to the foot of the bed." Defendant also testified that, as he and Bryanna discussed what was happening, the victim "was yelling" and said "he would take [defendant's] weapon and kill [his] ass with it." According to defendant, when Bryanna told the victim to be calm, the victim ran, jumped on the bed, and had his right arm extended above his head and his hand clenched in a fist. This prompted defendant to pull out his firearm and, he claims, shoot in the direction of the wall as a warning shot. Defendant testified that he fired a shot "[o]ut of fear for [his] life" and to "scare [the victim] off." Defendant also testified that, at some point, he saw the victim with a weapon in his hand. Thus, the evidence and testimony presented could have led a reasonable, properly instructed jury to conclude that defendant's use of the firearm was justified "because defendant honestly and reasonably believed that his life was in imminent danger and that it was necessary for him to exercise force to protect himself," *Dupree*, 486 Mich at 708, or to prevent such harm "to another individual," MCL 780.972(1)(a).

As a result, there was a reasonable probability that, had trial counsel requested and obtained self-defense instructions for voluntary manslaughter and felony-firearm, the result of defendant's trial would have been different. Thus, defendant both received ineffective assistance of counsel and was prejudiced as a result, and therefore is entitled to have his convictions set aside, and the case remanded for a new trial.[4]

---

[4] Given our conclusion regarding defendant's claim of ineffective assistance of counsel, we need not consider any issue relating to defendant's sentence.

## III. CONCLUSION

Defendant received ineffective assistance of counsel because counsel did not request a self-defense instruction for most of the offenses charged, although such an instruction was justified. In light of the remaining evidence, we find that defendant has established the he was prejudiced by that failing. Consequently, for the reasons stated in this opinion, defendant's convictions and the judgment of sentences are vacated, and the case is remanded for a new trial. We do not retain jurisdiction.

/s/ Karen M. Fort Hood
/s/ Mark J. Cavanagh
/s/ Jonathan Tukel