*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* I. GLASER, Minor.

UNPUBLISHED
December 16, 2021

No. 357331
Cass Circuit Court
Family Division
LC No. 08-000057-NA

*In re* KARNES/GLASER, Minors.

No. 357345
Cass Circuit Court
Family Division
LC No. 08-000057-NA

Before: GADOLA, P.J., and SWARTZLE and CAMERON, JJ.

PER CURIAM.

In these consolidated child-welfare appeals,[1] father and mother appeal as of right the trial court's order of disposition taking jurisdiction over the minor children, IG and MK. In Docket No. 357331, father argues that the trial court's justification for jurisdiction was not supported by a preponderance of the evidence and that his trial counsel was ineffective when she stipulated to probable cause at the preliminary hearing. In Docket No. 357345, mother argues that insufficient evidence supported IG's removal, the trial court clearly erred when it exercised jurisdiction over the children, and the trial court clearly erred when it did not make best-interest findings when it denied a motion to return IG to mother's care. We affirm.

I. BACKGROUND

Mother is the biological mother of both MK and IG. Father is the biological father of IG and the step-father of MK. In August 2020, the Department of Health and Human Services filed

---

[1] *In re I. Glaser Minor*, unpublished order of the Court of Appeals, entered June 15, 2021 (Docket Nos. 357331 and 357345).

a petition seeking, in relevant part, to remove the children from the care of mother and father. The petition alleged that respondents, when able to do so, neglected or refused to provide proper and necessary support for the children and subjected the children to a substantial risk of harm to their mental well-being.

According to the petition, Children's Protective Services had been involved with the family more than a dozen times before this case, including one investigation that was still pending at the time the petition was filed. Mother had two previous removals. The petition alleged that mother and father had physically abused MK. Several allegations had been made that MK was sexually abused by multiple men, including father, Hugh Lane (a registered sex offender), Rudolph Huntley, and MK's biological father. A medical examination established that MK had been sexually penetrated. As part of an ongoing safety plan, MK was not to be alone with father, Lane, or Huntley; IG was not to be alone with Lane or Huntley.

The referee held an emergency preliminary hearing after the Department filed the petition. A caseworker testified that, when she and a law enforcement officer were at the home to serve mother with court documents, mother placed IG in her vehicle with her and then drove off quickly, nearly hitting the officer with her vehicle. The caseworker also testified that, while she was at the home that day, Lane arrived and told her that mother was a good mother and that the children should not be removed. The caseworker further testified that MK was "very descriptive" in her allegations of sexual abuse by her biological father and that MK's biological father later admitted to two separate instances of sexually abusing MK. According to the caseworker, MK had various mental illnesses and had attempted suicide.

At a preliminary hearing, mother and father both waived the probable-cause determination and the referee authorized the petition. IG was removed from the care of mother and father; MK continued to live with her aunt, whom she had been living with for some time.

At a bench trial at the adjudication stage, witness testimony established that mother was aware of allegations that Huntley had touched MK inappropriately, but she did nothing in response to the allegations. Testimony further established that MK sexually acted out at a young age. Although no testimony was presented that the safety plan was ever violated, the trial court heard testimony that Lane and Huntley were often in the home.

Dr. James Henry, a social worker at Western Michigan University and the director of the Southwest Michigan's Children's Trauma Assessment Center, testified that MK had complex trauma and very negative perceptions of herself, referring to herself as "crazy" and reporting that people called her a "liar." According to Dr. Henry, MK reported being sexually abused by her biological father and other men. MK had a "tremendous fear of returning home to her mother" because of neglect, which MK attributed to mother's drug use. Additionally, MK perceived "that the world is dangerous, people hurt me; my mother doesn't protect me and somehow this is all my fault" and she feared for IG's safety. On the basis of his evaluation of MK, Dr. Henry recommended that IG not be returned home until after he could assess her level of psychological and physical risk. He testified that, in his experience, when one sibling is at risk, "it is highly likely that the other siblings are at risk."

Father testified that he took MK on overnight trips in his semitruck, even after she had allegedly touched him inappropriately as a young child and accused him of sexual abuse. Both mother and father testified that the password to IG's phone was Lane's birthday because, they maintained, MK was good at breaking into their phones—even though MK was not living in the home at the time. At the end of the trial, the trial court found that it was "clear that these children are living in chaotic situations. Where it's neglect or it's criminality, it's not a safe environment for either one." Accordingly, the trial court took jurisdiction over the children. These appeals followed.

## II. ANALYSIS

### A. PROBABLE CAUSE

Mother argues that there was not probable cause to support IG's removal. But mother waived this issue when her attorney stated, "I agree with [father's attorney] about waiving Court's determination for probable cause . . . ." Thus, the issue is waived and we decline to review it. See *In re Ferranti*, 504 Mich 1, 33; 934 NW2d 610 (2019).

### B. JURISDICTION

Mother and father argue that the trial court's decision to take jurisdiction over the children was not supported by a preponderance of the evidence. "To properly exercise jurisdiction, the trial court must find that a statutory basis for jurisdiction exists. Jurisdiction must be established by a preponderance of the evidence." *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004) (citations omitted). This Court reviews for clear error a trial court's decision to exercise jurisdiction in light of the trial court's findings of fact. *Id*.

In relevant part, MCL 712A.2(b)(2) provides jurisdiction over proceedings involving the abuse or neglect of juveniles "[w]hose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in." The Department did not present any evidence that the safety plan was violated or that it was a crime for Lane to be in the home. The trial court acknowledged this, but still found that the children were at risk when in the home, not just because of criminality, but also because of depravity. The trial court expressed concern that the Department permitted Lane to be in the home in the first place and viewed the conduct of mother and father allowing Lane to enter the home repeatedly while IG was present as "indefensible." The trial court also noted that father was previously accused of physical and sexual abuse. The trial court expressed that it was "very concerned" about MK's sexually acting out when she was younger. And it was further concerned that, after these incidents, father took MK on work trips in his truck, and there had been past allegations of inappropriate touching by father.

The trial court concluded that it was "clear that these children are living in chaotic situations. Where it's neglect or it's criminality, it's not a safe environment for either one." Based on our review of the record, we conclude that the trial court did not clearly err by taking jurisdiction over the children.

## C. BEST INTERESTS

Mother argues that the trial court clearly erred when it denied her motion to return IG to her care because it did not evaluate the motion in light of the child's best interests. Mother is correct that the trial court did not explicitly evaluate IG's best interests when it denied mother and father's joint motion to return IG to their care. After making its findings to take jurisdiction over the children, however, the trial court stated: "I didn't officially say that the motion for return of [IG] is denied. I meant to say that and given the Court's findings until we make some changes in the family, the return is denied." In this statement, the trial court incorporated its findings from the bench trial into its denial of mother's motion. The trial court had already found, just moments before, that respondents' home was unsafe for the children. Thus, although the trial court could have been clearer, the trial court did consider IG's best interests because it carefully considered the conditions at mother and father's home when taking jurisdiction of the children.

Finally, to the extent that mother argues that the trial court's best-interests determination are incorrect on the merits, any such argument is abandoned. In this portion of her brief, mother cited the requirements that the trial court was required to make best-interests findings, but she failed to cite to any authority establishing what factors the trial court was required to consider when making those findings. In doing so, mother failed to address the applicable standard in her brief. Thus, the argument is abandoned. See *Cheesman v Williams*, 311 Mich App 147, 161; 874 NW2d 385 (2015).

## D. INEFFECTIVE ASSISTANCE OF COUNSEL

Father argues that defense counsel was ineffective when she waived the probable cause determination at the preliminary hearing. "The principles applicable to claims of ineffective assistance of counsel in the arena of criminal law also apply by analogy in child protective proceedings . . . ." *In re Martin*, 316 Mich App 73, 85; 896 NW2d 452 (2016). Regardless of whether a claim of ineffective assistance is properly preserved, if the trial court did not hold a *Ginther*[2] hearing, "our review is limited to the facts on the record." *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000). "A claim of ineffective assistance of counsel is a mixed question of law and fact. A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008).

To establish a claim of ineffective assistance of counsel, respondent must show that: (1) defense counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007). Respondent counsel's performance is deficient if it fell below an objective standard of professional reasonableness. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). Respondent bears a heavy burden to show that counsel made errors so serious that counsel was not performing as guaranteed by the Sixth Amendment, and respondent must overcome a strong presumption that counsel's

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973). No *Ginther* hearing was held in this case.

performance constituted sound trial strategy. *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001), citing *Strickland v Washington*, 466 US 668, 104 S Ct 2052, 80 L Ed 2d 674 (1984); *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). The performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's error, the result of the proceeding would have been different. *Jordan*, 275 Mich App at 667. The "reasonable probability" standard can be satisfied by less than a preponderance of the evidence. *People v Trakhtenberg*, 493 Mich 38, 56; 826 NW2d 136 (2012).

Father's claim is predicated on an assumption that his counsel did not review the transcript of the emergency preliminary hearing, and that had she done so, she would not have stipulated to probable cause at the preliminary hearing. Father offers no evidence that his trial counsel did not review the transcript of the emergency preliminary hearing. But, in any event, it is not plainly apparent from the record that stipulating to probable cause was objectively unreasonable. Father had been accused of physical and sexual abuse; another man present in the home, a registered sex offender, had been accused of sexual abuse; and medical tests had demonstrated that MK had been sexually penetrated. Accordingly, even if father's counsel had argued against probable cause, there is not a reasonable probability that the outcome of the proceedings would have been different. The trial court still would have likely found that probable cause existed that one or more of the allegations in the petition were true.

## III. CONCLUSION

For the reasons stated in this opinion we affirm the trial court's order taking jurisdiction over the children in Docket Nos. 357331 and 357345.

/s/ Michael F. Gadola
/s/ Brock A. Swartzle
/s/ Thomas C. Cameron